Michael V. Severo, Esq. (SBN.: 072599)
**THE SEVERO LAW FIRM**
301 N. Lake Avenue, Ste. 945
Pasadena, CA 91101-4703
(626)844-6400
msevero@mvslaw.com

Attorneys for Defendant,
  CHRISTOPHER KAMON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>CHRISTOPHER KAMON,<br><br>            Defendant. | Case No.  23-CR-00024-JLS<br>             23-CR-00047-JLS-2<br><br>**DEFENDANT CHRISTOPHER KAMON'S OBJECTION TO GOVERNMENT'S BREACH OF THE PLEA AGREEMENT**<br><br>Hearing Date:  April 11, 2025<br>Hearing Time:  9:30 a.m.<br><br>Courtroom 8A, First Street Courthouse<br>Hon. Josephine L. Staton |
|---|---|

   Defendant CHRISTOPHER KAMON hereby objects to the Government's sentencing position filed on its behalf on the grounds that it constitutes a breach of the plea agreement.

   Defendant requests any and all remedies provided by law.

   **Counsel for the Government was notified of this objection and stated that he will file a response opposing it.**

Dated: April 5, 2025              THE SEVERO LAW FIRM

                                  By   /s/ *Michael V. Severo*
                                       Michael V. Severo
                                       Attorney for Defendant,
                                       CHRISTOPHER KAMON

# MEMORANDUM OF POINTS AND AUTHORITIES
## INTRODUCTION

Christopher Kamon ("Kamon") was charged with wire fraud in two separate cases. On January 19, 2023, Kamon was charged by Information in case number 23-CR-00024 JLS. He was charged with a single count of wire fraud violation of 18 U.S.C. § 1343, arising from allegations that he embezzled funds of his employer Girardi Keese, a law firm ("the side fraud"). On January 31, 2023, Kamon was indicted along Thomas Girardi ("Girardi") the owner of the law firm, on five counts of wire fraud ("the main fraud").

On October 8, 2024, Kamon changed his plea and pleaded guilty to the single count in the Information and Count Two of the Indictment. The plea was entered pursuant to a consolidated plea agreement with the Government. A copy of the plea agreement is attached hereto as Exhibit A, for the court's ease of reference.

In the plea agreement, the parties agreed that the amount of loss was between $3.5 million and $25,000,000, resulting in an upward adjustment of either 18 or 20 levels in the guidelines. These adjustments include both the main fraud and side fraud cases.

In the plea agreement the Government agreed as follows:

a. Page 4, ¶ 3a. Not contest facts agreed to in this agreement.

b. Page 4, ¶ 3e. At the time of sentencing, recommend that the court select the low end of the applicable guideline range.

The Government further agreed that the loss "is less than $25,000,000...." Page 9, ¶ 13.

In addition, the parties agreed to a factual statement found at the end of the plea agreement as Exhibit A.

U.S. Probation prepared its Presentence Report ("PSR") and disclosed it on December 27, 2024. The PSR calculates the amount of loss at $26,000,000.00,

positing that the payments made to Victim 1 should not be credited to the amount of loss.  As part of its report, the U.S. Probation Office also included a letter from the bankruptcy trustee regarding Girardi and asking for the "maximum sentence."

On January 13, 2025, defendant filed an objection pursuant to Federal Rules of Criminal Procedure 32(f) and CACD Local Rule 32-3.2, arguing that grouping both cases into one guideline calculation and failing to give credit for payments made to victims.

On March 28, 2025, defendant and the Government filed their respective sentencing positions.

The Government's position agrees with the amount of loss in the PSR ($26 million) but disagrees with the PSR that Kamon is entitled to a 2-level reduction for being a zero-point offender (USSG § 4C1.1).  The Government's position also relies, in part, on its Exhibit 1, a letter from Elissa Miller, the Chapter 7 Bankruptcy Trustee for Girardi Keese.  See Docket 454, p. 1, line 27.  In this exhibit, Ms. Miller implores the court to impose "the maximum sentence," as she did with the same type of letter regarding Girardi and included in the PSR.  The letter also states that Kamon charged over $22 million on GK's American Express card, facts that are inflammatory, were not agreed upon between the parties and are intended solely to increase the guidelines calculation.  In fact, in the Girardi trial, the Government disputed these charges were for Kamon's benefit and not legitimate GK expenses.

On April 3, 2025, the PSR was revised to remove the previously granted 2-point reduction for zero-point offender status.  In its revised version, the PSR asks for a 151-month imprisonment sentence.

## THE GOVERNMENT HAS BREACHED
## THE PLEA AGREEMENT

"The government breaches its bargain with the defendant if it purports to make the promised recommendation while 'winking' at the district court to implicitly request a different outcome." *U.S. v. Farias-Contreras*, 104 F.4th 22 (9th Cir. 2024), quoting *U.S. v. Heredia*, 768 F.3d 1220, 1231 (9th Cir. 2014).

Plea agreements are contractual in nature but because it involves a defendant's constitutional rights, the validity of the agreement is examined to ensure that it complies with a defendant's voluntariness and intelligence in entering into the plea bargain and what said defendant understood to be the terms of the agreement when he pleaded guilty. *Farias-Contreras,* at p. 33, citing *U.S. v. Harvey,* 791 F.2d 294, 301 (4th Cir. 1986)(cleaned up).   Thus, the Supreme Court has ruled that the Government's breach of the plea agreement is "undoubtedly a violation of the defendant's rights," *Puckett v. United States,* 556 U.S. 129, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009), and the Government is held to strict compliance with its terms in order to protect the fundamental rights of the criminal defendant. *U.S. v. Farias-Contreras* at p. 32.

In *Farias-Contreras,* supra, the Ninth Circuit in an *en banc* opinion, ruled that the Government's position in sentencing must be "tethered to its obligations under the plea agreement, even when responding to the defendant's specific request for downward departure or the court's questions." *Id.* at page 31.

Here, the plea agreement (Exh. A) required that the Government "not contest facts agreed to" in the agreement and recommend "that the court select the low end of the applicable guideline range." Plea Agreement, Exhibit A, pp. 4-5 (cleaned up).   The Government has breached the agreement in several respects.

It appears that the Government thought that simply stating in its position that it was recommending 121 months of imprisonment because it was the low-

end of the guideline range in the PSR was sufficient to comply with its contractual obligations.

First, the Government was required to abide by the facts stated in the agreement and not contest them.  In this respect, the Government agreed at page 9, ¶ 13 that the loss  (a) **is** less than $25 million and (b) an adjustment of +20 would apply (Emphasis supplied.)  By agreeing with the PSR's loss calculation of loss as $26 million, the Government has contested the facts, agreed to 22 added levels, and failed to correct the facts regarding some of the adjustments.  In making its argument, the Government did not just simply agree with the PSR on the loss calculation, it argued forcefully in favor of the calculation in a 2 ½ page response to defendant's objections thereto and affirmatively states that "there is no basis to reduce defendant's loss by the amount of lulling payments." See Government Position, pp. 14 – 16.

Furthermore, the Government has attached as Exhibit 1 to its memorandum, the Bankruptcy Trustee's letter stating that Defendant spent over $22 million on Girardi Keese's American Express, all for his own use.   In addition to being a false and misleading statement – a point that the Government made at Girardi's trial – the Government's sentencing position, by relying on Government counsel's declaration and "accompanying exhibits" (See Government's Sentencing Position, page 1), has adopted the Bankruptcy Trustee's position because the added $22 million would bring the loss to $48 million, and thereby breached its obligations not to contest facts agreed upon, i.e., the loss is less than $25 million.

Thus, while arguing out of one side of its figurative mouth that defendant "should be given the benefit of his bargain" and recommending the loss be limited to below $25,000,000, the Government affirmatively states out of the other side that the loss amount is actually about $48 million.

Clearly, the Government's promise to recommend that an adjustment of "plus 20 for loss applies," Plea Agreement, p. 9, is directly contradicted by its arguments in favor of the PSR's calculations, the reliance on the Bankruptcy Trustee's incorrect and misleading letter, and its specious arguments regarding defendant's status as a zero-point offender.  Its strategy resonated with the U.S. Probation Office, however.  A revised PSR, disclosed on April 3, 2025, adopted the Government's argument regarding defendant's status as a zero-point offender and raised the guidelines calculation and its recommendation.

Closely connected to its promise to abide by the facts in the plea agreement is the Government's agreement to recommend a sentence at the low end of the guidelines.  In *Farias-Contreras*, the *en banc* court, quoting from *U.S. v. Whitney,* supra, stated:

"Although a sentencing recommendation need not be made enthusiastically, when the government obligates itself to make a recommendation at the low end of the guidelines range, it may not introduce information that serves no purpose but to influence the court to give a higher sentence." *United States v. Whitney*, 673 F.3d at 971 (cleaned up), cited with approval in *Farias-Contreras,* supra.  Significantly, the *Whitney* and *Farias-Contreras* opinions stated that, "This prohibition precludes referring to information that the court already has before it, … including statements related to the seriousness of defendant's prior record, statements indicating a preference for a harsher sentence, or the introduction of evidence that is irrelevant to any matter that the government is permitted to argue." *Id.* (cleaned up).

With respect to its argument regarding defendant's zero-point offender status, the Government's position is clearly lacking in reason.  While it correctly points out the different factors, it fails to address how defendant *personally* inflicted substantial financial hardship upon Girardi's victims.  This lackluster argument is obviously offered simply to circumvent its obligation to give the

defendant the benefit of the bargain and to bring the Government's position in line with the PSR.

Furthermore, by using highly inflammatory language such as saying that defendant's conduct "warrants a significant custodial sentence," calling defendant a "gatekeeper" (defined as restricting access to others) and the "mastermind", agreeing with Bankruptcy Trustee that the court should impose "the maximum sentence,", the Government breached its covenant to recommend a sentence at the low end of the guidelines as interpreted by clear Ninth Circuit law.

## CONCLUSION

For the foregoing reasons defendant respectfully declares a breach of the plea agreement and asks the court to find such a breach and provide relief by giving defendant the benefits for which he contracted.

Dated:  April 5, 2025                         THE SEVERO LAW FIRM

By   /s/ *Michael V. Severo*
     Michael V. Severo
     Attorney for Defendant
     CHRISTOPHER KAMON